[ * 168 ] * Afterwards, in this term, the Court delivered their opinion seriatim, in substance, as follows:—
Parker, J.
This action is brought to recover the amount of salary for the year 1803, which the plaintiff claims as the settled minister of Tyringham during that period. The declaration states the invitation of the town to the plaintiff to take upon him that office, and the offer of the pecuniary compensation, which they stipulated to pay him towards his support. It then alleges his assent to the propositions of the town, and his settlement in office consequent thereon, his performance of the duties and services of his office, and the arrears of his salary remaining unpaid. These points, as appears from the report of the judge, were all proved or agreed at the trial.
In answer to this demand, the defendants set up a right to discharge themselves from the obligation of this contract at their pleasure; and offered evidence on the trial .that they had exercised this supposed right, by voting in a legal town meeting, that they no longer considered the plaintiff as their minister; which vote was prior to the period for which he claims his salary in the present action. This evidence was rejected by the judge, and the question now before the Court is, whether the evidence was, or was not, rightfully rejected.
The vote in this case was unaccompanied with any cause of complaint. It was, in short, a naked expression of the will of the people to dissolve the connection that existed between them and their minister. Thus the question is brought before us, whether towns and parishes have the right of dismissing their ministers at pleasure, without assigning any breach of duty or immoral conduct against them.
It is not denied that the contract, in this case, was intended by the parties to bind them for some period, longer or shorter. But the defendants contend that there is, by the declaration of rights assured to them, the privilege of putting an end to it at their pleasure. This they infer from the right expressly secured to all societies incorporated for religious purposes, at all times, to elect their public teachers; and they say that, without a right to dismiss, they cannot be said to have, at all times, a power to elect. Such a power, being inconsistent with the nature of contracts in general, which, *145 * being made between two or more parties, cannot ordina- [ * 169 ] rily be dissolved without the concurrence of all, ought to appear very plainly granted by the constitution, to receive support in a court of justice.
The constitution, whenever a question arises upon its meaning, must receive such a construction as is reasonable, and conformable to its general tenor and spirit. The object of its framers, and of the people who adopted it, with respect to the clause under consideration, unquestionably was, to secure to the citizens the liberty of electing pastors, whose religious tenets they approved, and to contract with them for their support. The very term contract, used in the constitution, imports something more durable than a mere temporary connection, dissoluble at the will or caprice of either of the parties. It is true the religious societies are left at liberty to make such contract, and for such term of time as shall be agreed between them and their minister; but the contract once made, it is subject to all such rules of law as govern other engagements. Here no term of time is expressed, during which the ministerial connection is to subsist. But, considering the established usage of the country, known to the contracting parties; the nature of the duties to be performed, which peculiarly require permanency in office; the solemnity of the act, which testifies the assent of the minister and his people,—it would certainly seem that the connection, thus established, was to endure for life, unless some stipulation to the contrary should be expressed. Add to this the provision made by our laws for the first settled ministers in new countries, to have a considerable portion of land in fee, and the use of other lands during their ministry, and no doubt will remain, that our legislature has always considered the office of a religious teacher durable as his life, unless otherwise provided by the original terms of his settlement, or unless dissolved by a breach of contract on his part, or by a merited loss of that character for purity of morals, and Christian virtue, which is essential to the due performance of his sacred functions.
But it is said the constitution has provided that parishes, &c., shall, at all times, have the privilege of electing their teachers, and that this privilege cannot be enjoyed without the * right of dismissing them when they please. This [ * 170 ] construction is certainly violent, and by no means consistent with the reasonable sense and import of the words. If this doctrine be true, the minister, who is settled to-day, may be dismissed to-morrow; and thus a connection, which, for the ‘nterests, temporal and spiritual, of both parties, would seem to equire stability, would be as uncertain as the tempers or views *146 of the various characters which compose a parish or religious society. How inconsistent this would be with the intentions oí the parties at the time of making the contract, and how incongruous, upon this idea, is the term settlement, used by the parties, need not be urged..
The true construction of the words relied upon undoubtedly is, that, at all times when a vacancy exists, the people shall have the privilege of electing and contracting with their ministers: they shall not have one imposed upon them by any hierarchy, shall not be subject to tithes, &c. &c., but shall choose for themselves, and pay in their own way.
I cannot, therefore, entertain a doubt that the contract made between a minister and his people, in terms like the one before us, continues for the life of the minister. Whether it may not be dissolved by neglect of duty, immoral conduct, or flagrant unsuitableness of character, need not now be decided, as nothing of this sort is alleged against the present plaintiff. It may not be amiss, however, to observe, that the nature of the office implies a contract to preserve an irreproachable character for the moral and Christian virtues ; and that whenever gross'misconduct, or omission of duty, shall be proved against a minister suing for his salary, my apprehension is, that he will be deemed to have forfeited all rights resulting from the sacred profession he has abused; in addition to which the people, connected with such a minister, by resorting to an ecclesiastical council, a tribunal coeval with the settlement of our country, will be sure to find a remedy, by the removal of a man who has given them reasonable cause of disgust. I am of opinion, in the case before us, that a new trial ought not to be granted.
As to the motion for arresting the judgment, the declaration does not appear to me so defective, as to be insufficient to support a judgment after a verdict. All the facts necessary [ * 171J * to ground a promise upon, are contained in it; the formal words of a promise only, are omitted (9). However, this objection might have prevailed upon a special demurrer, I am against receiving it as a cause for arresting the judgment upon the verdict in this case.
Sedgwick, J.
Considering the great importance of the question agitated in this cause, if it were possible for me to entertain a doubt respecting its merits, I should be disposed for a continuance of the action, for advisement and consideration. But having my opinion *147 clearly settled, and apprehending that great confusion and mis chief would follow from the Court’s delaying to render judgment, if the public should conceive such delay owing to a doubt or hesitancy in their minds, I think it expedient to express an opinion at this time, and hope that our decision will put the question at rest.
Before the trial of this cause, I had never conceived that a contract, such as is declared on in this case, was a contract at will. Indeed, it was at the trial that, for the first time, I heard such an opinion suggested. But that suggestion did not, at the time, impress my mind vvith any force, nor have the arguments of the defendant’s counsel, although very ingenious, had a greater effect.
This was a contract made and entered into between a Congregational minister, and the inhabitants of a town, constituting, in this case, one parish. It appears to me to have been made and con ducted in the forms usual in such cases in our country. The church call the minister; the town, at a legal meeting, concur in the invitation, and vote the salary; the minister, after solemn consideration, accepts the invitation: at the time appointed he is set apart to his office, according to the forms of that religious sect to which the parties belong; and in this case it is agreed that he continued faithfully to exercise and perform the various duties of his office, and particularly during the term for which he demands his salary. None of these facts are contested by the defendants.
But the defendants offered on the trial to give in evidence a vote of the town, passed previously to the performance of the services declared for, in which they resolved, but without stating any reasons, that they would no longer consider the plaintiff as their minister; and they also offered * to prove that they gave [ * 172 ] notice, seasonably, to the plaintiff of this procedure.
This evidence was rejected by the judge at the trial, and the question now to be decided is, whether that rejection was, or was. not, legal and proper. If it was right, judgment ought to be entered according to the verdict; if it was wrong, a new trial ought to be granted.
The counsel for the defendants contend, in effect, that the office of a minister, about whose invitation and settlement such solemn deliberation and formality were had, is an office determinable at the pleasure of the minister or people ; or that, at most, it is an office to be holden from year to year. They agree thct by the laws and usages of the country, previous to the establishment of our state constitution, a minister, thus elected and ordained, held his office/ with all its rights and privileges, during his life; unless the contract was sooner dissolved by the mutual consent of the parties to it, or *148 by such misconduct of the minister, as, in some way consistent with the discipline of the sect to which he belonged, should have the same effect. It is impossible to hold any other opinion on thi point, from a bare perusal of the statutes of the former province of Massachusetts Bay, relating to the subject. But, in further confirmation of the opinion, four unanimous decisions of this Court are now recollected. These decisions were, it is true, applied to contracts made before our state constitution; and that now under consideration was entered into at a period since.
. And it has been strongly insisted and relied upon, in behalf of the defendants, that the constitution has virtually repealed the preexisting laws; and the third article of our declaration of rights, which gives to towns, &c., the right, at all times, of electing their teachers, and contracting with them for their support, has been urged upon the attention of the Court, as conferring also a right, at all times, to create a vacancy, as necessary to the exercise of their right of election. But can this be the true construction of that article ?
The legislature, by declaring that ministers, as soon as they are settled, shall be considered as inhabitants of the towns where settled, and entitled to all the rights and privileges [ * 173 ] *of such inhabitants, have given an explanation of this article by no means consistent with that contended for on the part of the defendants. They must have thought the office to have a greater permanency than a mere tenure at will, to annex to it rights not acquired in ordinary cases, but by a considerable residence. It is worthy of observation that the mode of settling ministers has continued in every respect the same, since the establishment of the constitution, as it was before. It is a pretty general practice in the country, on the introduction of a minister to the charge of a parish, to give him, besides the annual salary agreed on, an estate in land in fee, or in lieu of a sum of money adequate to the purchase of a place of residence. Public provision has also been made by government, appropriating a lot of land, besides the parsonage, to the first settled minister, of newly-settled towns in ice. These facts operate very strongly, in my mind, to show the public and general impression in the country, that a settlement of a minister, under a contract for an indefinite period, is a settlement for life. Indeed, they show the absurdity of a construction, which gives to the minister a right to dissolve the contract, as soon as these grants are vested in him. And if the contract is dissoluble at the pleasure of 0113 of the contracting parties, it must be equally so at the pleasure of .he other. The consequences resulting from sucli a doctrine, would be mischievous ki the extreme. Mankind are *149 capricious even in their most serious concerns. Would ministers, who regarded the comfort of their families, or their own personal quiet and security, be willing to make a contract on such terms ?
The anxious regard which the framers of the constitution have displayed for the public religious instruction of the people, most effectually negatives a construction of that instrument, which reduces the security of a minister for his salary, below that which a laborer has for his bargained wages. This instrument has given, or rather reserved, to the people the power of making contracts with their public instructors: what is there, then, that shall invalidate those contracts ? It is said to be impossible that the people should have, “ at all times,” the power of contracting anew, unless they have power to dissolve and annul an existing contract; or, in other * words, to break it at their pleasure. [ * 174 j The same mode of reasoning would apply to any other contracts. A man has by law an absolute right to dispose of his property or his services at his pleasure; but having, in any supposed case, exercised that right, his power is so far restrained, as the other party is interested in the subject of the contract. If he has made a disposition of his property, it is no longer his to contract about, and this is equally true in a contract for future labor or service. He can make no future engagement, which would impair the rights of a party with whom he had previously contracted.
So far is the constitution from establishing the construction con tended for by the council for the defendants, that it irresistibly implies directly the contrary conclusion. Let the second and third articles of the declaration of rights for this purpose be candidly and impartially considered, and the intention of those who framed, and of those who adopted and ratified that instrument, so far as respects our present purpose, cannot be doubted. In language strong and energetic, the religion of Protestant Christians is established. Liberty of conscience is secured. Provision is made for the support and maintenance of public Protestant teachers of religion and morality. The exclusive right of electing their public teachers, and of contiacting with them for their support and maintenance, is guarantied to religious societies; and it is made their duty, at their own expense, to make suitable provision for the institution of the public worship of God. After all this, it cannot reasonably be believed that the constitution has prohibited the making of a contract by the parish with a minister for his permanent settlement and support; because it vvould be impossible, with such a construction, to obtain the important objects so explicitly declared. And it is most manifest, as has been already suggested, that in our statutes there is the implied legislative construction that a minister *150 has a stability, in the tenure of his office, beyond that contended for in the present instance; and I have no doubt that generally, and I believe universally, since the adoption of the constitution, the same construction has been practically adopted by parishes in their contracts with their ministers.
[*175] *In this case it is unnecessary precisely to determine the nature of the tenure which a minister, circumstanced as the plaintiff in this case is, has in his office; whether it be for life determinable for sufficient cause, by an ecclesiastical council, or in any other mode recognized by law; or whether only for misbehavior, or how that misbehavior is to be ascertained. It is unnecessary to determine all the questions which would be comprised under so extended a view of the subject; for if the contract here be not a contract merely at the will of the parties, or, at most, a hiring from year to year, it is agreed that the plaintiff ought to recover. And whence is it to be collected that such is the nature of the contract ? It has already been proved, that, by the constitution, the parties are not restrained from making a contract of permanent stability. What, then, was the meaning of the parties to this contract, apparent from their language and conduct ? Is there any thing expressed or implied in the vote of the town, by which it can be understood that the intention of the defendants was as they now contended ? Let any man of sound mind reflect on the terms in which the defendants have expressed their meaning by their votes; their deliberation as to the previous vote of the church ; their agreement to settle the plaintiff as their minister; their guarding the public ministerial land; and providing for a permanent equalization of the annual salary, by placing it on the basis of the prices of specific articles, and determine whether it is possible that they thought they were forming a contract, which was to endure as long as, and no longer, than the pleasure of either party; and whether that pleasure should depend on the exercise of a well-directed discretion, or on whim and caprice. What was the understanding of the plaintiff? This may be learned from the serious deliberation, with which he contemplated the proposition of the defendants, and the solemn and impressive language in which he expressed his acceptance of it. From a deliberate consideration of the language of the parties, it is impossible for me not to conclude, and with the most perfect satisfaction, that neither party supposed that the continuance of tire contract was to depend on the pleasure of each other respectively, or that it was no more than a hiring from year to year. Nor is there, in my opinion, any thing in the nature of the [* 176] relation between these parties, * which should lead to such a conclusion, but the contrary. If these contracts *151 are merely at the will and pleasure of the parties, would it not diminish much of that respect and reverence with which it is desirable that the clerical character should be viewed by the peoplé? and on the part of the minister, must not a consciousness of dependence on the mere pleasure of the people affect that firmness of mind which is essential to an impartial and effectual reproof of vice and immorality? And in such a state, with what prudence could the minister form a permanent connection, which might be important to the comfort and happiness of his life? I should have deeply lamented, if I had found myself bound to give a different construe tian to the constitution ; but I am pleased to have it in my power to declare that I have not a particle of doubt on the subject.
As to the motion in arrest of judgment, it is not necessary to determine whether this declaration would have been good on special demurrer. The material facts are all substantially alleged. It is true that, in assumpsit, the declaration must allege a promise and a sufficient consideration. This was the point in the case cited from Lord Raymond, and in the other cases mentioned at the bar. But it is not necessary to use the word promise; any other intelligible word or expression conveying the same idea (as “ agree,” in the case at bar), will serve the purpose (10).
In this declaration the promise is, in my opinion, laid with such certainty, that, after verdict, the judgment ought not to be arrested
Parsons, C. J.
In this cause, after a verdict for the plaintiff, the defendants move for a new trial, and also in arrest of judgment.
On the motion for a new trial, we are called upon to decide a question of the first importance to the good order and peace of society, and to the best interests of our fellow-citizens. The defendants’ counsel insists that a Congregational minister of any parish, regularly called, ordained, and settled, according to the ancient usages of the country, and faithfully executing the duties of his office, according to his capacity, holds his office at the will of his parish, who may remove him at their pleasure. The plaintiff’s counsel contend that he holds *his office [ * 177 ] for life, determinable on sufficient cause exhibited and proved before a proper tribunal. If the office be holden at will, the evidence rejected ought to have been admitted, and the action musí bo sent to a new trial, otherwise the verdict must stand.
It is a general rule that an office is holden at the will of either party, unless a different tenure be expressed in the appointment, oi is implied by the nature of the office, or results from ancient usage. A consideration of the nature and duties of the ministerial office is *152 important in determining its tenure. It is the duty of a minister to adapt his religious and moral instructions to the various classes comprising his congregation. He ought, therefore, to have a knowledge of their situation, circumstances, habits, and characters, which is not to be obtained, but by a long and familiar acquaintance with them.
Vice is to be reproved by him in public and private; and the more prevalent and fashionable are any-bad habits, the more necessary is it for the faithful minister to censure them, and to rebuke those who indulge them. But if it be a principle that his office and support depend on the will of his people, the natural tendency of such a principle, by operating on his fears, will be to restrain him from a full and plain discharge of his official duties. And it may be added, that the same principle, by diminishing his weight and influence, will render his exhortations and rebukes unavailing and ineffectual. And as it cannot be for the interest of the people to hold a power, probably dangerous, and certainly inconvenient to themselves, I cannot believe that a tenure at will, whence this power results, can accord with the nature and duties of the office. And it may be also observed, that if the tenure of his office be at will, a minister, after a life of exemplary diligence in the exercise of his official duties, may, when oppressed with the infirmities of age, be removed from office and be dismissed to poverty and neglect. A consequence of this power in a parish, will be the deterring of young men of information and genius, from entering into the clerical profession ; and devolving the public instruction in religion and morals, on incompetent persons, without talents, education, or any suitable qualifications. Thus an office, which, [ * 178 ] * to be useful, ought to attract our respect and veneration, will be the subject of general contempt and disgrace. And an effect of this kind, surely every good citizen would wish the laws to prevent, so far as the laws may have power.
But considerations of irresistible weight result from the ancient usages established by our pious ancestors, and wisely continued to this day.
In the settlement of a minister, the parish invite some candidate to preach on probation, that they may have an opportunity to judge of his qualifications, and that he may have some knowledge of the state, temper, and principles of the people. If a settlement be agreed upon by both parties, it is the general practice of parishes, not having parsonages, to grant a sum of money, or other property, to the minister, exclusive of his annual salary, which is emphatically called his settlement. This name was derived from the uses to which it was intended the money should be applied by the minister *153 With it he usually purchased in his town some domicil, where he might have a permanent abode among his people, and be conveniently situated to attend to all the duties of his office.
But if the tenure of his office be at will, it is unquestionably at the will of either party. The minister, therefore, if the parish can remove him at their pleasure, may, at his own pleasure, immediately after he has availed himself of the grant, abandon his office, and carry away his settlement, to the great loss and damage of the parish. The usage of granting a settlement is satisfactory evidence that the tenure of his office is not at will, but that the ministerial relation must continue until it be dissolved for good cause.
As an encouragement to settle ministers in new towns where the property of the inhabitants is not large, the practice of granting permanent settlements has been long confirmed by grants from the former provincial legislature, and from the General Court of the commonwealth.
When new townships are sold, two rights are reserved by the government, one as a parsonage for the minister and his successors, and the other for the absolute use of the first settled minister and his heirs. Unwise indeed, and negligent, *must [ * 179 ] have been the legislature, in making this charitable provision, if the first minister, soon after his settlement, might resign his office at his own will, and retain, for himself and his heirs, the fruits of the public beneficence.
But in forming my opinion I am not confined to inferences drawn from the practice of towns or parishes in the settlement of ministers, or from the intent of legislative grants. Before and since the revolution, this question has been considered by the courts of law, in many actions sued by ministers for the recovery of their salaries. And it has been the uniform opinion of all the judges, who have successively filled the bench of our highest judicial court, that when no tenure was annexed to the office of a minister by the terms of settlement, he did not hold the office at will, but for life, determinable for some good and sufficient cause, or by the consent of both parties; and many cases have been mentioned, where this opinion was declared. And no case has been produced or referred to, by the counsel for the defendants, where a different opinion has been given.
The counsel for the defendants have contended that, admitting the contract of settlement before the revolution, was not at will, the constitution has altered the law; and that now the tenure of the minister must be at will. The part of the constitution relied on, is the provision in the third article of the declaration of rights, which *154 secures to towns, &c., the exclusive right, at all times, of electing their public teachers, and of contracting with them for their support and maintenance. The argument is in this form; a town shall at all times elect its public teacher; but if, after one be elected, the town cannot remove him at pleasure, then there will be a time when the town cannot elect a public teacher, the office being full.
This argument certainly will prove much. If the town, in the election of a public teacher, contracts with him for a certain number of years, by this construction it must have a right to break its contract solemnly made. A conclusion so unreasonable and unjust, it is supposed, the counsel for the defendants are not willing to admit. The fair and natural construction of this provision is, that a town, &c., shall at all times, when it has no public teacher, have [*180] the exclusive right * of election, but no right to violate its own contracts solemnly and deliberately made.
This article of the constitution has, without doubt, made some alteration in the ecclesiastical establishments of the state. Under the colonial laws, the church members in full communion had the exclusive right of electing and settling their minister, to whose support all the inhabitants of the town were obliged to contribute. And when the town neglected or refused suitably to maintain the minister, the county court was authorized to assess on the inhabitants a sum of money adequate to his support. Under the colony charter no man could be a freeman, unless he was a church member, until the year 1662; and a majority of the church constituted a majority of the legal voters of the town. After that time, inhabitants, not church members, if freeholders, and having certain other qualifications, might be admitted to the rights of freemen. In consequence of this alteration, a different method of settling a minister was adopted, under the provincial charter. The church made the election, and sent their proceedings to the town for their approbation. If the town approved the election, it also voted the salary and settlement. When the candidate accepted, he was solemnly introduced to the office by ordination, and became the settled minister, entitled to his salary and settlement under the votes of the town. If the town disapproved, and the church insisted on its election, it might call an ecclesiastical council; and if the council approved the election, the town was obliged to maintain the person chosen, as the settled minister of the town, by the interference of the Court of Sessions, if necessary; but if the council disapproved, the church must have proceeded to a new election.
By the constitution the rights of the town are enlarged, if it choose to exercise them, and those of the church impaired. If the church, when their election has been disapproved by the town, shall *155 unwisely refuse to make a new election, or the town, for any cause, shall abandon the ancient usages of the country in settling a minister, it may, without or against the consent of the church, elect a public teacher, and contract to support him. And such teacher will have a legal right to the benefit of the contract, although he cannot be * considered as the settled minister of the [ * 181 ] gospel, agreeably to the usages and practice of the Congregational churches in the state. An adherence to these usages so manifestly tends to the preservation of good order, peace, and harmony among the people, in the exercise of their religious privileges, it may be presumed that a departure from them will never be admitted by any town, but in cases of necessity.
It has been objected that a minister holds his office at his own will, because his town have no legal remedy, if he abandon his office, and therefore that he should also hold at the will of the town. The conclusion is certainly just, if the premises were correct. But a minister does not hold his office at his own will; and if he abandon it without cause, and without the consent of his town,-the inhabitants may recover at law such damages as they have sustained by his injurious conduct. In Cumberland, before the revolution, Mr. Wiswall, a settled minister of the parish of New Casco, in the town of Falmouth, left his parish without its consent, and was ordained over the Episcopal church in that town. The parish brought an action against him to recover damages for his leaving his office. There was no objection made by the court, or the defendant’s counsel, to the action, as not lying in such a case; but the cause went off from a variance between the declaration and the contract of settlement.
It is further objected that the minister ought to hold his office at the will of either party, because there is no jurisdiction competent to declare when the office is forfeited, or when the contract may be dissolved; and that the custom of applying to an ecclesiastical council may be rendered nugatory by either party refusing to concur in the appointment.
This objection deserves a particular consideration. It is the duty of a minister to teach by precept and example. If his example is vicious, he is worse than useless. Immoral conduct is then such misfeasance, as amounts too forfeiture of his office. I do not mean to include mere infirmities incident to human nature, and to which an habitually good man is sometimes liable. Negligence also, or a wilful and faulty neglect of public preaching, or of administering the * ordinances, or of performing other [ * 182 J ísual parochial duties, is such a non-feasance, as will ause a forfeiture of the office. In either of these cases, or in *156 both, the town may, at a legal meeting, declare the office forfeited, assigning in their votes the causes of the forfeiture, and of their dismission. If the minister do not resist, no further question will arise; if he still claim the office, and sue for his salary, the charges made by the town, as creating a forfeiture, are questions of fact properly to be submitted to the jury. If they find the allegations true, the minister will not be considered as holding his office after the vote of dismission. If the allegations are false, justice requires that he shall recover his salary. These allegations the jury are competent to inquire into, and on such inquiry ultimately to decide And doubtless they would be as willing to relieve a town from the burden of supporting a vicious and unworthy minister, as they would to aid an exemplary and faithful one in recovering his stipu lated salary.
There are also objections to a minister founded in questions of doctrine and discipline. A town may sometimes desire a dissolution of the ministerial contract, from its impoverishment, by a great part of its inhabitants annexing themselves to other denominations of Christians, or from other causes. A minister may also desire his dismission from various causes. In all these cases, therefore, and also on charges of immorality and neglect in the minister, the parties, if they cannot agree to dissolve the contract, may call to their assistance an ecclesiastical council mutually chosen ; and their advice, technically called their result, is so far of the nature of an award made by the arbitrators, that either party conforming thereto will be justified. If, in a proper case for the meeting of an ecclesiastical council to be mutually chosen, either party should, unreasonably and without good cause, refuse their concurrence to a mutual choice, the aggrieved party may choose an impartial council, and will be justified in conforming to the result (11).
Thus a reasonable tribunal is established to decide on all cases of difficulty and controversy between a minister and his people; a tribunal founded in ancient usage, resorted to in practice, [ * 183 ] and probably in many cases, but certainly in one *case in which I was counsel, supported by the opinion of all the judges of the Supreme Judicial Court. In the case of Fuller vs. The Inhabitants of Princeton, the inhabitants had charged the minister with opposition to the independence of the United States, and with hostility to the principles of the revolution, on the success *157 of which depended the preservation of our civil and religious privileges. They stated that they had requested Mr. Fuller’s concurrence in the choice of a mutual council; that he unreasonably refused his concurrence; that thereupon they called an ex parte council, who advised to the dismission of their minister ; and that they had dismissed him accordingly. Mr. Fuller contended that he was always willing to submit the controversy to a mutual council. On this point evidence was given on both sides. The Court, in their direc tian to the jury, instructed them, that, if they were satisfied that the town had offered Mr. Fuller a mutual council, and he had unreasonably refused to agree to one, then the town was justified in proceeding conformably to the result of an ex parte council. But if they were satisfied that Mr. Fuller had always been willing to submit the controversy to the result of a mutual council, then the result to an ex parte council, and the proceedings of the town pursuant to it, were in law a nullity.
Hulbert, for the plaintiff.
Dewey and Bacon, for the defendants.
Upon the whole view of the subject, I am entirely satisfied that the conduct of the judge excepted to, was perfectly right.
I see no reason for arresting the judgment after verdict; for though there are some informalities in the declaration, it appears there was a good cause of action. A title defectively set out, is good after verdict, but not a title, which, in itself, appears defective.
The whole Court concurring, there can be no new trial, ■ and judgment must be entered according to the verdict.

 [The promise is the gist of the action, and this is not stated in any technical or other language. It is only stated that they agreed among each other, but not with the plaintiff.—En.l

 [The difficulty is, that the declaration did not set forth any agreement with the pla'.ntijf.—Ed.]

 [Vide note to Burr vs. The First Parish in Sandwich, 9 Mass. 299.—In the case of an agreement to submit a matter to arbitration, neither party can be compelled specifically to perform it; and it is no bar to a suit.—Street vs. Rigby, 6 Ves. 815.— Tattersall vs. Groote, 2 B. & P. 135.—Thomson vs. Charnock, 8 D. & E. 159.—Nichols vs. Chelie, 14 Ves. 270.—Waters vs. Taylor, 15 Ves. 10.—Kill vs Hollister, 1 Wils 129.—Ed.]