## SAMUEL H. PECKHAM *versus* The Inhabitants of the NORTH PARISH IN HAVERHILL.

By the settlement of the boundary line between Massachusetts and New Hampshire in 1740, a parish in Haverhill which owned a meetinghouse and parsonage land, was divided into two parts, and the meetinghouse fell within the limits of New Hampshire. These divisions were subsequently incorporated as distinct corporations, the one in Massachusetts, under the name of the North Parish in Haverhill, the other, under the name of the Congregational Society in Plaistow. An act was passed by the legislature of Massachusetts, authorizing a sale of the parsonage lands belonging to the North Parish, and appointing trustees for the management of the fund to be raised thereby, and directing the income to be expended in the support of public worship for the benefit of both corporations, when appropriated to that purpose by a vote of the parish. In 1830 the income was 285 dollars. An act was also passed in New Hampshire authorizing the sale of property of the Congregational Society, appointing trustees to manage the fund to be raised thereby, and directing the income to be applied for the benefit of both corporations, and a small fund was created in pursuance of the act. In 1831, the two corporations, at separate meetings, voted to unite in engaging the plaintiff to be their minister, and to appropriate the income of the ministerial fund for his support ; and the following proposals were made to the plaintiff by the committees chosen at such meetings for the purpose of contracting with him: " We J. C., &c., committee of the North Parish of Haverhill, and D. H., &c., committee of the Congregational Society in Plaistow, by virtue of the powers vested in us by the parish and society aforesaid, &c., agree to give and promise to pay S. H. P., [the plaintiff,] annually for his services as minister aforesaid, the whole income of the parsonage funds belonging to said parish and society, which income shall be $285 annually, also the free use and occupancy of their parsonage lands and buildings, and in addition to the above, S. H. P. shall annually receive the sum of $60 from the society in Plaistow. We further agree, that if S. H. P. shall be installed, he shall remain the minister of the said parish and society, and this contract shall continue in full force and be binding on said parish and society until S. H. P. shall be dismissed by a mutual ecclesiastical council which shall be called for that purpose by a majority of the congregational church belonging to the said North Parish and Society as one party, and S. H. P. as the other party." The plaintiff accepted these proposals, and was installed. In 1833, the parish voted not to appropriate the income of the ministerial fund for the support of the plaintiff, and to dissolve the ministerial connexion between them and the plaintiff. In an action by the plaintiff against the parish to recover the sum of $285, as the income of the fund for the year 1833, it was *held*

that tue contract of the parish and society, so far as it concerned engaging and settling the plaintiff, was joint, but that in regard to the payment for his services, it was several, and that the plaintiff was entitled to recover the income of the parish fund.

Peckham<br>v.<br>North Pai<br>in Haverhil

A foreign corporation cannot be sued in this State.

In an action upon a joint contract made by the defendant and a corporation not within this State and not liable to the processes of our courts, *it seems*, it is not necessary that such corporation should be named in the writ as a co-defendant.

It is not illegal for two religious corporations to unite in the settlement of a minister, if they agree to worship together ; and the circumstance that one of the corporations is in an adjoining State, makes no difference.

Whether two religious corporations who unite in the settlement of a minister over them, can become sureties for each other for the payment of their respective portions of his salary, *quære*.

In a contract by which a minister is settled over a congregational parish, *it seems* that a stipulation that the contract shall be binding on the parish, until the minister shall be dismissed by a mutual ecclesiastical council which shall be called for that purpose by a majority of the church belonging to the parish, is not illegal ; but if it be illegal and void, still the parish cannot dissolve the contract at their own pleasure, without some misconduct on the part of the minister.

ASSUMPSIT to recover the sum of $285 for the services of the plaintiff as a minister of the gospel, from April 1, 1833, to April 1, 1834.

The declaration contained four counts ; of which the three first were general counts. The fourth count alleges, that the defendants, at a parish meeting held on January 15, 1831, voted to unite, and to choose a committee to unite, with the Congregational Society in Plaistow, to engage the plaintiff to be their minister, and also voted to appropriate the income of their parish funds for his support ; that thereupon a committee was chosen, and that this committee, in conjunction with a committee of the Congregational Society, on February 3, 1831, agreed in writing to give the plaintiff annually for his services as minister, the whole income of the parsonage funds belonging to the parish and society, which income they agreed should be $285 annually, and also the free use and occupancy of their parsonage lands and buildings ; that the proceedings of the committee were ratified by the defendants ; that the plaintiff was duly settled as their minister ; that he has ever since constantly and regularly performed the duties incumbent on him as such minister, and that he still stands in that relation to the defendants ; and that there is due to him the sum of $285, for his salary for the year ending April 1, 1834.

Peckham
v.
North Par
n Haverhill.

The defendants pleaded in abatement, that the promises set forth, if any such were made, were made by the Congregational Society in Plaistow, a religious corporation duly organized, jointly with the defendants, and that that society is not named in the writ as co-defendants with the North Parish in Haverhill.

The question upon the plea in abatement, was submitted to the Court upon an agreed statement of facts ; and in case this plea should not be sustained and the defendants should obtain leave to plead to the action, then the question upon the merits was submitted upon the same statement.

By the case stated it appeared, that in 1728 the northerly part of the town of Haverhill was incorporated into a parish, called the North Parish ; and that the meetinghouse was built in the same year. About the same time the town voted, that the income of a certain lot of land should be appropriated to the benefit of the minister of the North Parish. The parish took possession of the land, and held it until it was sold in pursuance of the statute of Massachusetts, of 1822, *c.* 77.

In 1740 the boundary line between Massachusetts and New Hampshire was settled, and a large part of the North Parish in Haverhill, and which is now the town of Plaistow, together with the parish meetinghouse, fell within the limits of New Hampshire. The inhabitants of Plaistow, and the inhabitants of that part of the territory of the North Parish in Haverhill which remained in Massachusetts, continued to worship as a religious society in the same meetinghouse, the expenses of procuring ministers, repairing the meetinghouse and parsonage house, &c., being defrayed by them proportionably.

In 1753, the part of the parish which fell within the boundary line of Massachusetts was declared by the legislature of Massachusetts to be a parish, by the name of the North Parish in Haverhill. The Congregational Society, all the members of which lived in Plaistow, was incorporated by the legislature of New Hampshire, in 1816.

The statute of Massachusetts, of 1822, *c.* 77, authorizes the sale of the parsonage lands which belonged to the North Parish, and the appointment of trustees for the management of the fund to be raised thereby, and provides that the income

of the fund shall be expended in the support of public worship for the benefit of the members of the North Parish and of the Congregational Society in Plaistow, when appropriated to that purpose by a vote of the parish. A corresponding act was passed by the legislature of New Hampshire, on June 16, 1824, to authorize the sale of the parsonage lands belonging to the Congregational Society, to raise a fund for the support of the gospel ministry, and to appoint trustees for the management thereof. This act provides that the income of the fund shall be expended, as well for the use and benefit of the North Parish in Haverhill, who usually worship with the Congregational Society, as for that Society; provided, however, that the members of the North Parish in Haverhill shall pay their just proportion of all additional sums, over and above the income of the fund, which may be necessary for the support of public worship and other parochial purposes, and that if the parish shall acquire any funds for the support of public worship, the income of the same shall be expended as well for the benefit of the Congregational Society, as of themselves.

The trustees of the North Parish hold a fund amounting to $4750, the income of which in 1830 was $285; and the parish is the owner of some parsonage land in New Hampshire. The Congregational Society has no property in Massachusetts. It has a fund amounting to about $50.

Ever since the boundary line between the two States was determined, the members of the North Parish and the members of the Congregational Society, have held separate parish meetings. The parish and the society have each chosen committees, from time to time, to settle together the expenses incurred on account of the ministerial funds.

The following votes were recorded in the parish records of the North Parish, as having been passed at a meeting of the parish, on January 15, 1831 : " Voted to unite with the Congregational Society in Plaistow, to engage the Rev. Samuel H. Peckham to be their minister ; Voted to appropriate the income of the parish funds for his support ; Voted to choose a committee to unite with the Congregational Society in Plaistow to engage the Rev. Samuel H. Peckham

to be their minister ; Voted that said committee appropriate the income of the parish funds to Mr. Peckham's support and no more." The committee elected in pursuance of these votes consisted of Jesse Clement and two others.

At a meeting of the Congregational Society on January 22, 1831, it was voted to unite with the North Parish to engage the plaintiff to be their minister, and "to give the income of the ministerial fund for his support," and Daniel Harriman and two others were chosen a committee for the purpose.

On February 3, 1831, the following proposals were made in writing, to the plaintiff, by the two committees : " We, Jesse Clement, &c., committee of the North Parish in Haverhill, and Daniel Harriman, &c., committee of the Congregational Society in Plaistow, by virtue of the powers vested in us by the parish and society aforesaid, make the following proposals to the Rev. Samuel H. Peckham, which shall be legally binding on said parish and society in case the said Rev. Samuel H. Peckham shall accept them, and shall be installed as the minister of said parish and society, viz. : We agree to give and promise to pay the said Peckham annually for his services as minister aforesaid, the whole income of the parsonage funds belonging to the said parish and society, which income shall be $285 annually, also the free use and occupancy of their parsonage lands and buildings, and in addition to the above, the said Peckham shall annually receive the sum of $60 from the society in Plaistow. We further agree, that if the said Peckham shall be installed as aforesaid, he shall remain the minister of the said parish and society, and this contract shall continue in full force and be binding on said parish and society, until the said Peckham shall be dismissed by a mutual ecclesiastical council, which shall be called for that purpose by a majority of the congregational church belonging to the said North Parish and society as one party, and the said Peckham as the other party." On February 5, 1831, the plaintiff accepted these proposals, his answer being addressed " To the congregational church and society in North Haverhill and Plaistow." At the close it is directed to the committees of the two congregations and also the committee of the church. At the time when these pro

posals were made to the plaintiff, only three male n ʒmbers of
the church were inhabitants of Haverhill. A majority of the
church were then and have ever since been inhabitants of
Plaistow and members of the Congregational Society in that
town. The plaintiff was installed in February 1831.

Peckham<br><i>v.</i><br>North Par<br>in Haverhil.

A meeting of the North Parish was held on April 9, 1831,
in pursuance of a warrant containing the following, among
other articles ; " To see if the parish will approve of the
doings of the committtee in settling the Rev. Samuel H.
Peckham as their minister without the consent of said parish ;
To see if the parish will approve of the doings of the' clerk
in recording only a part of that motion, which was put as
follows, viz : to see if the parish will choose a committee to
unite with the Congregational Society of Plaistow to engage
the Rev. Samuel H. Peckham to be their minister, time and
salary indefinite, but which is to be hereafter agreed upon at
this meeting." The following votes were passed at the meet-
ing : " Voted to appropriate the income of the parish funds
for the support of the Rev. Samuel H. Peckham ; Voted to
approve the doings of the committee in settling the Rev.
Samuel H. Peckham ; Voted to approve the doings of the
clerk in recording the votes at the last parish meeting."

At a parish meeting of the North Parish on April 10, 1833,
the following votes were passed ; " Voted not to appropriate
the income of the ministerial fund for the support of the Rev.
Samuel H. Peckham ; Voted to dissolve the ministerial con-
nexion, which is represented to exist between the North
Parish and the Rev. Samuel H. Peckham." On April 20,
1833, the plaintiff refused to accede to the votes dissolving
his ministerial connexion with the parish, and continued to
preach in the meetinghouse. On April 1, 1834, a committee
of the parish took possession of the parsonage lands and
buildings, which until then had been occupied by the plaintiff.
No proposition for an ecclesiastical council was made by the
parish. The plaintiff's salary was paid to him up to April
1, 1833.

In 1832 and 1833, committees were appointed by the Con-
gregational Society, to settle accounts with the North Parish.
At a meeting of the members of the Congregational Society

Peckham
*v.*
North Par.
in Haverhill.

on March 4, 1834, it was voted to raise the sum of $60, for the support of the plaintiff for that year ; and at an adjourned meeting on March 11, 1834, it was voted to appropriate to his support the income of the fund then due to the society.

It was agreed by the parties, that if the Court should be of opinion, that the plea in abatement could not be maintained, the defendants might move for leave to plead anew and to the merits ; and that if the Court should adjudge the plea to be good, that the plaintiff might move for leave to amend.

*May 7th.*

*Saltonstall* and *Minot*, for the defendants. As to the plea in abatement the defendants contend, that the contract in question was made by them jointly with the Congregational Society of Plaistow, and not severally. By the terms of the contract, there were but two parties to it, the parish and society as one, and the plaintiff, as the other ; and if the agreement had been put in the form of an indenture, it would have been of two parts only. In making a joint contract with the plaintiff, the parish and society only acted in accordance with a long established practice. The plaintiff might reasonably require the security of their joint engagement for the payment of his whole salary, although part was to be paid by each. Our construction of the contract is, that the parish and society both stipulated, that the plaintiff should receive all the income of the funds of both, and guaranteed that it should amount to the sum of $285 annually, and that the Congregational Society should pay the sum of $60 annually. They should therefore have been joined in this action. *Byers* v. *Dobey*, 2 H. Bl. 236 ; *Mansell* v. *Burridge*, 7 T. R. 352. Even if the Congregational Society have performed their part of the contract, the two corporations must be joined if the contract be joint.

The consideration moved from both corporations jointly ; they are both therefore jointly interested. But if the consideration moved separately from each, still if the beneficial interest is joint, the contract, the legal interest, is joint. Hammond on Parties to Actions, 20, *et seq.*

As to the merits, the defendants object to the contract as illegal and not binding on them.

1. Because two parishes cannot join in such a contract especially if one of them be within another State, and out of the jurisdiction of this Commonwealth.

Parishes are created for public purposes, with specified powers and privileges, are subject to prescribed duties, and can only act for the purposes and in the manner prescribed. Their powers are few and limited, being confined to a single object. *Dillingham* v. *Snow*, 5 Mass. R. 547 ; Constitution of Massachusetts ; *part* 1, original *art.* 3 ; *St.* 1786, *c.* 9 ; *St.* 1799, *c.* 87. A parish is required by law to perform its duties of itself and within itself. One parish cannot unite with another to support the same minister ; for this would be a violation of the provision of *St.* 1799, *c.* 87, § 2, requiring every parish, under heavy penalties, to be provided, if of sufficient ability, with a public protestant teacher of religion. It would be evasive of the law, which confers upon parishes the power of taxing the inhabitants thereof, for the purpose of supporting public worship therein. It would indeed be altering and enlarging the limits of a territorial corporation. Probably the plaintiff has never preached within the limits of the parish which he has sued for his salary ; and he did not expect to preach there, when he was settled. It cannot be objected, that the defendants are not of sufficient ability ; for they hold property the income of which constituted almost the whole salary of the plaintiff.

But here the parish has not only united with another religious corporation in a joint undertaking to do what they are required by law to do of themselves, but such other corporation is not within the State ; and we have therefore no jurisdiction over it. A parish cannot legally raise money to support public worship or to build or repair a meetinghouse, without the limits of the Commonwealth. *Stetson* v. *Kempton*, 13 Mass. R. 272.

2. The contract is not binding on the defendants, because it contains an illegal provision as to the mode in which the plaintiff is to be dismissed. This is an essential part of the contract ; and if illegal, it renders the whole contract void. *Roe* v. *Prideau*, 10 East, 158. It was settled in *Burr* v. *Sandwich*, 9 Mass. R. 277, that the power to contract with and settle a minister resides wholly in the parish, and not in the church. A contract of this nature, which divests the parish of the power of determining its continuance, and vests

such power in an independent body, cannot be legal; for if a church cannot be permitted to make a ministerial contract for the parish, they will not be allowed to determine when it shall be dissolved. *Baker v. Fales*, 16 Mass. R. 488; *Stebbins v. Jennings*, 10 Pick. 172. After a minister is settled, he is to remain, if the term is left indefinite in the contract, until he shall be dismissed by some legal mode. This may be effected by an ecclesiastical council; but such council must be called by the parties to the contract, or by one of them if the other unreasonably refuses after notice. *Avery v. Tyringham*, 3 Mass. R. 160; *Burr v. Sandwich*, 9 Mass. R. 277.

In the present case, a majority of the church are members of the Congregational Society of Plaistow and inhabitants of New Hampshire. The persons, therefore, who are to decide as to the expediency of a dissolution of the contract, are a foreign body, out of the jurisdiction of this Court.

It may be said, that parishes may waive their rights. But they cannot waive rights and privileges secured by law, especially where such waiver is to have a future operation.

We contend, that this contract was void, or at most, that its continuance must depend on the pleasure of the parish.

*Choate* and *How*, for the plaintiff, to the point, that as the Congregational Society was a foreign corporation having no attachable property in this Commonwealth, an action could not be brought against it here, and therefore that the plea in abatement was not sustainable, cited *Tappan v. Bruen*, 5 Mass. R. 193; *Call v. Hagger*, 8 Mass. R. 423; *Abbot v. Smith*, 2 W. Bl. 947; *M' Queen v. Middletown Manufacturing Co.* 16 Johns. R. 5; *St.* 1785, *c.* 75, § 8; *St.* 1786, *c.* 10, § 3; *St.* 1797, *c.* 50, § 1, 6; *St.* 1828, *c.* 114; *Hall v. Williams*, 6 Pick. 241; *Bissell v. Briggs*, 9 Mass. R. 462; 1 Saund. Pl. and Evid. 17; and to the point, that the vote of the parish to dissolve the ministerial connexion between them and the plaintiff was invalid, *Avery v. Tyringham*, 3 Mass. R. 160; *Cochran v. Camden*, 15 Mass. R. 296 *Thompson v. Catholic Cong. Soc. in Rehoboth*, 5 Pick. 469.

WILDE J. drew up the opinion of the Court. The first question submitted to the Court is, whether, upon the facts agreed, the plea in abatement can be maintained. The de-

fendants' counsel contend, that the facts show a joint promise by the North Parish in Haverhill and the Congregational Society in Plaistow, that both corporations agreed to act jointly in settling the plaintiff as their minister, and that the terms of the proposals made by their respective committees to the plaintiff, and his answer, denote the nature of the contract, and the meaning and intention of the parties, and prove conclusively, that the contract was joint, and not joint and several.   On the other hand, it has been argued by the plaintiff's counsel, that however conclusive the facts may be, to show a joint contract in some respects, yet in regard to the payment of the plaintiff's salary, the promises of the two corporations were several, or joint and several, and in either case this action can be well maintained.

There can be no doubt, we think, that in the call and settlement of the plaintiff, as the minister of the parish, and the religious society in Plaistow, the two corporations acted jointly ; but whether they jointly promised to pay his salary, is a question of no little difficulty.   It must be determined, however, according to the true intent of the parties to the contract, and not strictly according to technical rules ; for in the construction of all contracts, the situation of the parties, the subject matter of their transactions, and the whole language of their instruments or stipulations, are to be taken into consideration, in determining the meaning of any particular sentence or provision. *Sumner* v. *Williams*, 8 Mass. R. 214. No particular language or phraseology, therefore, is necessary to make a contract joint, or joint and several.   In all cases we must inquire what was the true intention of the parties. A contract may be binding upon several persons severally, although they do not so bind themselves in express terms. Thus in a case in Dyer, three were bound in an obligation thus, " we bind ourselves *et utrumque nostrum per se*," and the bond was held good enough and several.   Dyer, 19 *b*. So, where two bound themselves, or any of them, and the obligation was sealed and delivered by both of them jointly, it · was held to be a joint and several bond.   Bac. Abr. *Obligation*, *D* 4.

And so we apprehend that it cannot well be doubted, that

two or more covenanters, or promisors, may make a contract, consisting of distinct stipulations, as to some of which they may covenant or promise jointly, and as to others separately.

If two or more should make a conveyance of lands, and covenant jointly that they were seised ; and a covenant were added, that in case the grantee should be evicted, each should pay a particular sum ; we cannot doubt, that such covenants would be binding, the first being a joint, and the other a several covenant. So, if two or more should contract jointly with another to build a block of houses or stores, they might severally promise each to pay such a particular sum as might be agreed upon by the parties. Such contracts, however unusual, are in no respect illegal, and the party suing for the breach of such a contract might have a joint or several remedy, according to the nature of the breach. Upon these principles, and considering the situation of the parties, and the votes and proceedings of the two corporations, we are of opinion, that their promises to pay the plaintiff's salary were several, and that each is liable severally for the portion they agreed to pay respectively. At a parish meeting in January 1831, " a committee was chosen to unite with the congregational society in Plaistow to engage the Rev. S. H. Peckham to be their minister ; " and it was also voted, " that said committee appropriate the income of the parish funds to Mr. Peckham's support, and no more."

The committee of the Parish exceeded their authority in the proposals made to the plaintiff, by adding a stipulation " that the income of the parsonage funds belonging to the said parish and society should be $285 annually," and that the plaintiff should have the free use of the parsonage lands and buildings. The question then is, have the parish ratified the proposals and doings of their committee. After the plaintiff's ordination a parish meeting was duly notified, and one of the articles was, " to see if the parish will approve of the doings of the committee in settling the Rev. Samuel H. Peckham as their minister, without the consent of said parish ; " and it was voted to approve their doings. This article and vote, if construed strictly, would be confined to the settling of their minister without authority ; but we think the reasonable con-

struction is, that the parish ratified the doings of their committee as to the unauthorized stipulation in respect to the income of the parish fund and the use of the parish lands. But whether the parish intended to adopt this stipulation as binding on them alone, or on them jointly with the other corporation, does not very clearly appear ; nor do we think it necessary to decide that question in this case ; for if this stipulation were a joint promise of the two corporations, it would not follow that the promise to pay over to the plaintiff the income of the parish fund, was a joint promise also.   This promise must have been considered by the parties as binding only on the parish ; and it cannot be presumed, that the contract in this respect was supposed to admit of any other construction.   It is impossible to imagine that the parish and society intended to become sureties for each other, even if they had any right so to do, which may well be doubted.   And besides, the ratification of the committee's doings must be confined to their doings so far only as they exceeded their authority.

By the previous vote of the parish they had bound themselves to appropriate the income of the parish fund for the plaintiff's support ; that certainly was a promise of the defendants alone.   Until they ratified the doings of their committee they were bound to pay nothing more.   Then as to the use of the parish lands and buildings, and the stipulation that the income of the funds should amount to $285, the committees acted without authority from the society, as well as from the parish.   Neither was bound until the doings of the committees were ratified, and each became bound by its own vote of ratification.   It does not appear, that the society have ever expressly ratified the doings of their committee, and if they have impliedly, by voting to pay the $60 per annum, and their share of the income of the fund, still they have never ratified the stipulation as to the $285.   These considerations lead to the conclusion, that the parish and society acted severally and not jointly, as to the support and maintenance of the plaintiff, although they united and jointly engaged him to settle with them as their minister.

But if this contract were joint, still we think that the plea in abatement cannot be maintained.   It does not aver that the

Peckham<br>v.<br>North Par<br>in Haverhill

society in Plaistow was a corporation within this Common‧ wealth, nor that it had any attachable property in this State, nor that it was amenable in our courts, nor that it was authorized by law to make the contract. It is averred, that the corporation promised ; but an infant or feme covert may promise, although their promises may be void or voidable. But perhaps the last defect may be of little importance, and we lay no stress upon it. It is a sufficient objection to the plea, *that it does not aver any fact to show, that the society in* Plaistow was liable to be sued in this Commonwealth ; and we think 'it was not liable, because no writ can, by our laws, be legally served against a corporation in another State. The *St.* 1785, c. 75, § 8, directs the mode of service on towns and other corporations within the Commonwealth ; and other statutes regulating the service of writs extend only to individuals, and not corporations, to natural, and not to mere legal entities.

The case of *M' Queen* v. *Middletown Manuf. Co.*, 16 Johns. R. 5, is directly in point ; and we concur in the opinion of the court delivered by Judge *Spencer.* The statutes of New York, so far as they bear on the point in question, are substantially the same as ours. The court held in that case, that a foreign corporation could not be sued in New York ; that process against a corporation must be served on its head, or principal officer, within the jurisdiction of the sovereignty where this artificial body exists ; and that if the president of a bank of another State were to come into New York, his functions would not accompany him, when he moved beyond the jurisdiction of the government under whose laws he derived his character.

In the law thus laid down in reference to the operation of the statutes of New York, we fully concur, and as there is no material difference between the statutes there and here, we hold that all foreign corporations are without the jurisdiction of the process of the courts of this Commonwealth. If therefore the contract in this case were joint, still the defend ants may well be sued without joining the society in Plaistow Nor is any amendment in the declaration necessary ; for as the plea in abatement cannot be maintained, the plaintiff must

plead to the merits, and the non-joinder of the society in Plaistow, cannot be pleaded in bar, nor taken advantage of on the general issue upon the ground of variance. The defendants did promise, though not alone, if it were a joint contract, and not several.

As to the merits, the defendants object to the contract as illegal and not binding on them : 1. That two parishes cannot join in such a contract, especially if one of them be within another State ; and 2. That the contract contains an illegal provision, as a parish cannot legally make a ministerial contract, that shall put it out of their own power, and into the power of another body, to determine when it shall be dissolved. Neither of these objections can, we think, be maintained.

By the *St.* 1786, *c.* 11, § 3, parishes are authorized to grant and vote such sum or sums of money as they shall judge necessary, for the settlement, maintenance and support of ministers or public teachers of religion ; and it was never doubted that a parish might raise money for the support of public worship, when they had no settled minister, and might contract with a minister to preach with them for any term of time ; and if so, there seems to be no good reason, why a contract would not be binding, if it were for the services of the minister during life, whether he were settled in the usual form or not. We do not however think that there is any thing irregular, or illegal, in the settlement of a minister over two contiguous parishes or over two poll parishes, if they can agree to worship together. The law does not prohibit such a union ; and we do not perceive that the circumstance, that one of the parishes is in another State, will make any essential difference. And besides, if a tax could not be assessed in this case to pay the plaintiff's salary, that would not bar this action, for the plaintiff only seeks to recover the income of the parish fund, and the rents and profits of the parsonage lands and buildings. It does not appear, that the income for the last year fell short of the sum of $285 ; but however that may be, the plaintiff is entitled to recover the income of the parish fund.

By the third article of the Declaration of Rights, the legis-

Peckham.<br>v.<br>North Par.<br>in Haverhill

lature are directed to authorize and require towns, parishes, &c., to make suitable provision, at their own expense, for the support of protestant teachers of piety, religion, and morality, in all cases where such provision shall not be made voluntarily. When it is done voluntarily, and with funds belonging to a parish, we know of no restriction upon their power and right to appropriate the funds for that purpose, as they may deem suitable and proper.

As to the other objection, we think there is nothing illegal in the mode agreed upon for the dissolution of the contract ; but if that part of the agreement were void, still the parish could not dissolve the contract at their own will and pleasure, without alleging some misconduct on the part of the plaintiff, who did not hold his office at the will of either party ; as was fully settled in the case of *Avery* v. *Tyringham*, 3 Mass. R. 160.

We are of opinion, therefore, that in this form of action, and upon the merits of the case, as it appears upon the facts agreed, the plaintiff is entitled to recover.