Parsons, C. J.
The plaintiff, as the Congregational minister of the first parish in Sandwich, has brought an action of assumpsit, to recover of the parish his stated salary for three years, ending the 18th of April, 1812 ; and also an annual addition to his original salary for the same time, which he claims under a parish vote passed since his settlement. On the trial of the general issue, a verdict was found against the plaintiff, who has moved for a new trial, for the misdirection of the judge before whom the cause was tried.
In order to explain the nature of the objections to the directions of the judge, and the reasons which have influenced the Court in their consideration of these objections, it will be necessary to state some further proceedings at the trial, as they are to be collected from the judge’s report.
The plaintiff’s original salary, it appeared, was paid up to the-5th of September, 1811 ; and also the additional salary, as stated by the parish committee, to the same time. The plaintiff admitted that, in stating the additional salary, the committee had acted fairly and honestly in estimating the price of the necessaries for the use of a family ; yet he contended that they had, in fact, mistaken the prices of many of those necessaries; and that, correcting their mistakes, the additional salary would be much higher than the statement of the committee. He therefore offered evidence to prove those mistakes, * which the judge rejected; and the opinion of the Court is- prayed as to the legality of this rejection.
This additional salary is claimed by the plaintiff, pursuant to a vote of the parish, passed long after his settlement, on the third of November, 1800, by which it was voted, — that Mr. Burr’s salary be *258 stated by the parish committee annually, according to the necessaries for a family’s use, so as to make his original salary yearly in money as good as when he settled ; and if said necessaries should be of a price less than what they were at the time of his settlement, then the'said committee should estimate them accordingly. And the vote further expressed that Mr. Burr cheerfully accepted of what was voted.
Now, this regulation of the amount of the plaintiff’s salary, although it appears to us to be very reasonable and equitable, the parish were not bound to make; and if they assented to the regu lotion, it rested with them to determine in what manner it should be carried into effect. Neither can the plaintiff claim it in any other manner. The parish originally stipulated a certain annual salary in money, about the amount of which there could be no dispute ; and from the terms of this vote, it cannot be presumed to have been their intent to expose themselves yearly to an action at law, to ascertain the amount of the salary, if they and the plaintiff could not agree. In the vote, therefore, the principles regulating the salary, and the authority by which it should be regulated, were prescribed ; and the plaintiff must, in claiming the benefit of the regulation, conform to the terms of the vote, on which alone his title to it rests.
If the parish committee had acted corruptly or fraudulently in making the regulation, or had refused to make any, whether the plaintiff should be relieved at law against this malconduct of the committee is a very different question, and not now before the Court. In the present case, the committee having acted fairly and honestly, it * is our opinion that the statement of the additional salary made by them is conclusive, and that the evidence offered by the plaintiff to control it, was rightly rejected.
If this opinion is correct, it is manifest, from the judge’s report, that the verdict ought to stand, if the plaintiff, after the 5th of September, 1811, was not the minister of the parish. For to that time the salary, original and additional, has been paid to him.
The parish having, on the 18th of July, 1811, chosen a committee to settle with the plaintiff the terms of his leaving the parish, and that committee having requested the plaintiff to join with them in the choice of a mutual council, which he refused, they, ex parte, chose an ecclesiastical council, who came to a result on the subject of the complaints of the parish. Pursuant to this result, the parish, at a legal meeting holden on the 5th of September, 1811, being the next parish meeting held after the 18th of July preceding, passed a vo*e, by which, after reciting the choice of their said com *259 mittee, their powers, their proceedings, and the result of the said council, they voted an entire ratification of the doings of the committee, and an acceptance of the result of the said council; and declare, (to use the language of the vote,) “ in a formal, legal, and ecclesiastical manner,” the dismission of the plaintiff from his pastoral relation to the parish. This vote, the defendants insist, dissolved the contract between the plaintiff and them.
The law, as applicable to the question before us, is not disputed by either of the parties. And it is not denied that, in a proper case between a minister and his parish for the advice of an ecclesiastical council, if either party offer to the other such a council, to be mutually chosen, and the other, without sufficient cause, refuse to join in the choice, the party offering may choose an ecclesiastical council, and the advice of the council thus chosen, and acting fairly and honestly, will justify either party in adopting their result.
* In applying this law to the case, we have deliberated fully and attentively; so that our opinion might preserve all the reasonable rights, as well of ministers as of parishes
The first point calling our attention was, whether a proper case for an ecclesiastical council subsisted between the parties. For, if no proper case existed, the offer of a mutual council by the parish was unreasonable, and not the refusal by the minister. Our opinion upon this point is founded upon the allegations made by the parish in their vote of July 18, 1811, and in the result of the council ; both which are by the judge’s report made part of the case. By these documents, it appears that the parish complain, that when the plaintiff was settled with them, the tenets which he professed to believe, and which he, in fact, preached, as doctrines of the gospel, were such as the parish approved ; and that on account of his religious faith, then professed by him, they settled him as their ministei ; and that he now preaches, and endeavors to support, doctrines totally different, which the parish do not approve of or believe to be doctrines of the gospel.
From the ancient and immemorial usage of Congregational churches, before the parish settle a minister, he preaches with them as a candidate for settlement, with the intent of declaring his religious faith, that his hearers may judge whether they approve his theological tenets. And if he is afterwards settled, it is understood that the greater part of the parish and the minister agree in their religious sentiments and opinions. If afterwards the minister adopts a new system of divinity, the parish retaining their former religious belief, so that the minister would not have been settled on his present system, in our opinion the parish have good cause to complain. By the change in the opinions of their minister, they *260 are obliged to hear doctrines which they disapprove, and which they do not believe. There was, then, a proper case between the plaintiff and the defendants for the advice of an ecclesiastical council.
"*On the trial, the judge avoided any inquiry into the truth of the former, or the present religious faith of the plaintiff, as being a question proper for the inquiry of an ecclesiastical council. If questions of dogmatical theology were within the jurisdiction of this Court, we should be at a loss to find legal principles on which to decide them. But we disclaim all jurisdiction of that kind. We only determine that a complaint of this nature existed, and that the truth and importance of it were within a jurisdiction recognized by the uniform and immemorial usage of our Congregational churches.
Neither do we decide whether the usage of a parish, in requiring a religious creed from a young candidate on questions about which wise and good men have disagreed, is prudent and discreet. For a candidate, who is willing, by a public declaration of his faith, to conform to this usage, ought not afterwards to complain of it.
Another question which has been under our consideration is, whether, admitting the plaintiff to have refused, without sufficient cause, to join in the choice of a council, the pafish, by their committee, have in their election proceeded fairly and uprightly. We are clearly of opinion that, when either party shall renounce the right of uniting in the election of a council, the other party ought, in their choice, to select men who are not partial, prejudiced, or unfriendly, to the character of the opposite party, (a) On this point, the plaintiff has borne honorable testimony to the conduct of the parish committee, in his letter of August 13, 1811. In that letter he declares it to be his intention to meet the gentlemen .of the council, not because he recognizes their jurisdiction, but for the respect he entertains for them as Christian ministers, as gentlemen of integrity and discernment, and as lovers of peace and good order, whose advice would be designed and calculated to promote the best interests of his parish, in their then turbulent state.
Whether the council proceeded in a fair and impartial manner, on the complaint before them, has deserved and *had our attention. For a council chosen by one party, on the other party’s refusing, without sufficient cause, to unite in the choice, although commonly designated as an ex parte council, is yet a council competent and obliged to hear all the parties who wish to be heard. And, in this case, it was in evidence, *261 and not contradicted, that the council offered and desired to hear all parties, the minister and the parish.
These points being disposed of, which, indeed, were not insisted on, either at the trial or on the argument, there remain two other questions, which are involved in the issue.
The first question — whether the plaintiff did, in fact, refuse to agree with the committee of the defendant’s in calling a mutual council or not — was submitted to the jury, with all the relevant evidence introduced by either party, as well written as paroi; and the jury, whose province it was to weigh that evidence, to form any reasonable conclusion from it, and to decide on its effect, have found a verdict against the plaintiff. And as all the evidence on each side was before them, we are not authorized to set aside the verdict on this ground, as found against evidence.
The remaining question is, whether the plaintiff refused to join with the committee of the parish, in convening a council, for sufficient cause.
Before we give our opinion upon this question, it may be proper to make one or two preliminary observations. That a cause sufficient to justify the plaintiff in his refusal, must be believed by him to exist, and as such to produce an effect on his determination ; for a cause not supposed by him to exist could have no influence to effect his refusal. And that no other cause than those assigned by him as causes of his refusal, ought to be afterwards assigned by him to justify that conduct. For, when the authority of either party to proceed, depends on the other party’s refusing to concur without sufficient cause, the cause ought * to be assigned, that the sufficiency of it may be considered; otherwise the party proposing a mutual concurrence can, if the concurrence be refused, have no means of judging whether it has authority to proceed alone; And in a dispute between a minister and people, candor and frankness are peculiarly requisite, and are on both sides to be expected. The parly complaining ought explicitly to state the complaint, (b) and the other party, refusing to take the advice of a mutual council, ought also' explicitly to state his objections.
The causes assigned in the argument by the plaintiff’s counsel, as sufficient to justify his refusal, may be reduced to four: that the parish meeting, at which the committee were chosen, was not legally notified ; that a power to unite with the plaintiff in calling a mutual council, was not given to the committee; that the plaintiff was not allowed sufficient time to deliberate on the offer of the committee to convene a mutual council; and that the church *262 refused to join with the plaintiff in the choice, and advised him not to consent to a mutual council.
The facts to support the first cause are, that although the warrant for the meeting was signed by the parish committee, and the inhabitants of the parish alone were notified, and the object of the meeting, as stated in the warrant, was merely parochial, yet the constable was directed by the warrant to notify the inhabitants of the town; and thence, it is insisted, the meeting was illegal.
As at a subsequent parish meeting, the proceedings at this meet ing were all confirmed by the parish, and they were, therefore, bound by the proceedings, we are of opinion that the warrant was properly admitted to be read in evidence ; reserving to the plaintiff any objections he had against the effect of the proceedings, sup posing the meeting not to have been strictly legal. Now, it appeared that the plaintiff never assigned, as a cause of his refusal to join in the choice of a council, this supposed irregularity in the warrant; and, indeed, it did not appear to have * been known to either party, until the warrant was produced at the trial in the Common Pleas. This cause, if true, not being believed by the plaintiff to exist, could have no effect whatever in producing his refusal; and not being assigned by him as a cause of his refusal, it cannot avail him now, although his counsel have urged it in his behalf.
The fact on which the second cause depends, rests on the construction of the parish vote, under which the committee claimed their authority. The parish, in their vote, after complaining of their minister for adopting and preaching new doctrines, totally different from those which he avowed and preached at the period of his settlement, and for excluding from his pulpit those preachers in the vicinity to whom they had been before attached, and whom they had been accustomed to hear, proceed as follows: “ and to avoid any necessity on the part of Mr. Burr for a convocation of a council for his dismission, the precinct forbear any particular accusations, save as to doctrines, that his ministry may terminate without further delay, trouble, and expense; for these reasons, it is now voted that the salary paid in money to the said Jonathan Burr be stopped from the date hereof; and the improvement of the parsonage, after the expiration of the present lease to Messrs. Thomas Swift and Melatiah Bourne ; and that James Freeman, Esq., Nathan Nye, Esq., Samuel Fessenden, Deacon Sylvanus Nye, and Deacon Lemuel Freeman, be a committee to close the meeting-house, and engage a supply for the pulpit; and settle with Mr. Burr the terms of his leaving this society.”— On examining the terms of this vote, we think it proper to observe that, although the parish were the owners of the meeting- *263 house, yet while Mr. Burr’s relation to the parish, as their minister, was by them admitted to remain, the shutting of the meeting-house, without his consent, was certainly unwise and indiscreet, tending to irregularity, disorder, and confusion ; and we hope it will not be considered as a precedent to be followed. The voting that the plaintiff’s salary should cease * was clearly illegal and void; and this the parish afterwards admit, by paying him his salary to a subsequent period, when he was dismissed by the parish, pursuant to the advice of an ecclesiastical council.
As to the power of the committee under this vote, it is very clear that a power, without restriction, “ to settle with Mr. Burr the terms of his leaving the society,” would include a power to agree with Mr. Burr to request the advice of a council on the subject. But it has been argued that the power which might result from this general expression, was restrained by the manifest intention of the parish to render the convocation of a council unnecessary for the plaintiff. This document, like all other documents, must be construed in relation to the subject matter. This was the dissolution of a contract between a minister and his people. Now, it is well known that when the grounds of the proposed dissolution are agreed by the parties, no immoral or dishonorable imputation having been made one of the grounds, the parties may, and frequently do, dissolve the relation by mutual consent, without taking the advice of a council. But when the parish impute to the minister any immorality, or any fault in his ministerial conduct, which he denies, it is to be presumed that no minister would consent to leave his parish, without attempting to acquit himself of such imputations, in the opinion of a mutual council, manifested by their result. This being the case, it appears to have been the intent of the parish, not to restrain their committee, but to impute to Mr. Burr nothing that he would deny; (for he would doubtless justify the change of his religious opinions;) that he might not insist on a mutual council, but might be willing to agree with the committee on the terms of dissolving the contract of settlement.
This appears to have been the construction of the powers of the committee in the opinion of each of the parties. The committee, at their first interview with the plaintiff, were opposed to the calling of a council. The plaintiff insisted *on one. The committee afterwards assented; and the plaintiff agreed with them, if his church should concur. He called on the church for their concurrence; they refused, and advised him against the measure, of which he notified the committee. They then formally offered him a mutual council; and this he refused, because *264 his church would not concur with him in calling one. And although the church express an opinion of the want of powers in the committee, it does not appear that this opinion was adopted by Mr. Burr; but, on the contrary, it was in evidence to the jury that he declared that the committee had full powers. The plaintiff, therefore, not believing that there was any want of powers in the committee, or not assigning this supposed defect as a cause of his refusal, it cannot now be admitted as a sufficient cause.
It has been argued that, although the plaintiff did not object to the legality of the meeting, or the sufficiency of the powers of the committee, yet if that objection might legally have been made, it ought now to be received; because the parish for those causes, would not be bound by the result of a mutual council.
This argument is founded upon the hypothesis, that the result of a mutual council would have been obligatory, if the committee had been lawfully authorized to join with the plaintiff in the election. This hypothesis is not to be admitted; for the result of a mutual council, legally convoked, will not bind either party rejecting it. The effect of the advice of a council is nothing more than a legal justification of the party who shall adopt it.
Our ancestors came into this country smarting from the rod of the hierarchy, then in power in the country from which they emigrated. They were hostile to any coercive ecclesiastical jurisdiction, in all matters of doctrine and discipline, as repugnant to the liberties of their churches, and, although synods were holden, and councils of the churches convened, yet no compulsory authority was vested *in them. And the utility of an ecclesiastical coercive jurisdiction has been questioned, as tending to repress a free and liberal inquiry after truth, and to substitute for the error of heresy, sometimes questionable, the vice of hypocrisy, always censurable. And it may be further observed that, if Mr. Burr had been a party in convening this council, and if their result had repelled the charge against him, or declared it not sufficient to justify a dissolution of his contract with the parish, — if the parish had afterwards requested him to unite in calling another council to rehear and advise upon the same charge, he would have been justified in his refusal. For a minister ought to have some termination of his parochial disputes; and when a question has been settled by the proper tribunal, after a fair hearing and discussion, it should be at rest.
It has been assigned as a third cause, sufficient to justify the plaintiff in his refusal, that a reasonable time was not allowed him to determine whether he would accept the offer of the committee to convoke a mutual council. And it appears, from the documents, *265 that the committee, when they made their offer to the plaintiff, requested his answer while they should be together; and that the plaintiff immediately returned his answer. The committee wished for an answer as soon as might be, and before they should separate ; yet they did not require so immediate an answer, or make it a condition of their offer. If they had so done, and the plaintiff had asked for further time, which had been refused by the committee, who thereupon had proceeded ex parte to convene a council, it is evident that the plaintiff could not be charged with unreasonably refusing a mutual council; because he made a reasonable request for further time for deliberation. But, in fact, the plaintiff requested no further time, but, having formed his resolution, immediately returned his answer. He, therefore, cannot now allege that his refusal was owing to the want of sufficient time to deliberate.
* The last cause assigned by the plaintiff for his refusai, and the only cause stated by him to the committee, was, that his church would not concur with him in the choice of a mutual council; and it is in evidence that the church had refused their concurrence.
The sufficiency of this cause has had much attention, because the law on this point may have a general influence. And we have to decide upon the nature and powers of a Congregational church, as distinct from a parish. Formerly a question of this kind could not have arisen; because all the legal voters of any parish were members of the church. For no man was privileged to vote but a freeman ; and for many years after the first settlement of the colony, church membership was an indispensable qualification of a freeman.
Now, a parish and church are bodies with different powers. A regularly-gathered Congregational church is composed of a number of persons, associated by a covenant or agreement of church fellowship, principally for the purpose of celebrating the rites of the supper and of baptism. They elect deacons; and the minister of the parish is also admitted a member. The deacons are made a corporation, to hold property for the use of the church, and they are accountable to the members. The members of a church are generally inhabitants of the parish; but this inhabitancy is not a necessary qualification for a church member. This body has no power to contract with or to settle a minister, that power residing wholly in the parish, of which the members of the church, who are inhabit • ants, are a part. The parish, when the ministerial office is vacant from an ancient and respectable usqge, wait until the church have made choice of a minister, and have requested the concurrence of the parish. If the parish do not concur, the election of the church is a nullity. If the parish concur, then a contract of settlement is *266 made wholly between the parish and the minister, and is obligatory only on them. The proceedings of the church, so far as * they relate to the settlement, are only a nomination of a minister to the parish, which may be concurred in or rejected. This view of the subject must be confined to parishes created by the general laws of the land, and not extended to parishes incorporated specially with different powers.
When, therefore, the parish should have a reasonable claim to a dissolution of their contract with the minister, on grounds proper to be inquired into by an ecclesiastical council, if the church, who have no pecuniary interest in this contract, could, by refusing their assent to the convening of a council, justify the minister in rejecting the offer of a mutual council, the parish would be without remedy. The parish could not legally dissolve the contract by their own vote, for a difference with their minister merely relating to points of doctrine, because a court of law has no means of deciding on those points. The minister refusing to join in calling a mutual council, the parish could not proceed to choose one ex parte, because the non-concurrence of the church would be a sufficient cause of his refusal.
If, therefore, this cause of refusal, assigned by the plaintiff, were to be adjudged sufficient, the consequence would be, either that the parish had no remedy, which would be unreasonable ; or that they might dissolve the ministerial contract by their own vote, thus reducing the office of a minister to a mere tenure at will, which would be repugnant to the nature of the office, and the intent of the parties when the contract was made; or disputes in theology must come into courts of law for decision, when the law has not furnished the jimy with weapons of polemic divinity. The conclusion is, thereiore, necessary, that no interference of the church can justify the minister in refusing a mutual council; and this last cause assigned, resting on the non-concurrence of thei church, cannot be admitted as sufficient.
*This conclusion cannot be affected by any inference from a supposed peculiar relation between the plaintiff and his church. Although minister of his parish, it seems to have been supposed that he is emphatically the pastor of his church. This use of the terms may be adopted in common parlance, but we must look to the fact. A minister has no peculiar relation to his church, but as a member of it; and his right to administer the ordinances he claims from his ordination, which right may remain after his dismission from the church. The term pastor is correlative to flock, and is an expressive metaphor. Now, of whom is the flock composed ? Of all whom it is the minister’s duty to instruct *267 and reprove. And these are the inhabitants of the parish; they compose the flock, of which the minister is the pastor.
We have the less regret in admitting this conclusion, because we are satisfied, from attending to the result of the very respectable council in this case, that the peace and happiness of both parties will be promoted by a separation; and we are satisfied, from all the facts which have been disclosed in this cause, that Mr. Burr’s moral character remains fair and unimpeached. When he was settled, he and his people believed the same religious doctrines, which both parties then considered as essential'. Mr. Burr has since, from honest conviction, as we trust, changed his opinion as to some of those doctrines; and, believing the doctrines which he has recently adopted to be essential, he has endeavored to support them in his public preaching, to the great pain and dissatisfaction of a majority of his parish, who for this cause have sought a separation.
Judgment is to be entered for the defendants on the verdict, (c)

 [Thomson vs. Rehoboth, 7 Pick. 165. —Ed.]

 [Thomson vs. Rehoboth, 7 Pick 160, 5 Pick. 479.]

 [The opinion of the learned judge is hardly intelligible, and seems to be inconsistent with itself. He says, (page 295,) “The result of a mutual council, legally convoked, will not bind either party rejecting it. The effect of the advice of a council is nothing more than a justification of the party who shall adopt it.” But afterwards, (page 298,) in answer to the position of the plaintiff’s counsel, that the interference of the church did justify the plaintiff in refusing a mutual council, he says, if this were so, “ the parish would be without remedy. The parish could not legally dissolve the contract by their own vote, for a difference with their minister merely relating to points of doctrine, because a court of law has no means of deciding on those points. The minister refusing to join in calling a mutual council, the parish could not proceed to choose one ex parte, because the non-concurrence of the church would be a sufficient cause of his refusal. If, therefore, this cause of refusal assigned by the plaintiff were sufficient, the consequence would be, either that the parish had no remedy, which would be unreasonable; or that they might dissolve the ministerial contract by their own vote, thus reducing the office of a minister to a mere tenure at will, which would be repugnant to the nature of the office, and the intent of the parties when the contract was made; or disputes in theology must come into courts of law for decision, when the law has not furnished the jury with weapons of polemic divinity.” In Avery vs. Tyringham, (3 Mass. Rep. 182,) the same learned judge says, “ If, in a proper case for the meeting of an ecclesiastical council to be mutually chosen, either party should unreasonably, and without good cause, refuse their concurrence to a mutual choice, the aggrieved party may choose an impartial council, and will be justified in conforming to the result.” And Parker, C. J , said that either party “had a right, by the usage on these subjects, which,” he said, “ was the law of the land, to call an ex parte council, if there was a refusal or an unreasonable delay to join.” And in Stearns vs. Bedford, (21 Pick. 125,) Morton, J., in delivering the opinion of the Court, says, “ In many cases, it is not easy to see how it (i. e., the result of an ecclesiastical council) will justify one party, and not bind the other.” And in this case, the Court held that the result of such a council cannot bind either party to the performance if any condition, matter, or thing, which may be advised, required, or ordered, thereby to be done ; and that the performance, by one party, of any such matters or conditi ms, advised or required to be done or performed, will impose no legal obligations on the' other. But “ if the advice be that the ministerial relation be dissolved for any sufficient cause, eitner party will be justified in acting according to the advice;” and that the rule laid down in Avery vs. Tyringham must be taken, therefore, with some qualifications. On the whole, it would seem, from these decisions, that the decision of an ecclesiastical council, duly convened, would furnish a complete justification to either party who should conform to it; and that this is the only proper tribunal to decide *268 questions of doctrine and discipline. But, after all, the matter does not appear to be free from difficulty. Why, we may ask, has not either party a right to a trial by jury in these as well as the other cases of “ immoral conduct,” “ negligence, or a wilful and faulty neglect of public preaching, or of administering the ordinances, or of per forming other usual parochial duties,” which, it is said, (in Avery vs. Tyringham, p. 182,) will cause a forfeiture of the office, and which are admitted to be “ questions of fact, properly to be submitted to a jury,” and which the jury “ are competent to inquire into, and on such inquiry ultimately to decide ” ? The parties surely ought to have the means of obtaining a final decision of their disputes. But the law furnishes no means of convoking an ecclesiastical council, nor of compelling them to agree, or to decide, or act, upon any matter, when they have assembled. In the instances above mentioned, it seems to be conceded that the parties have a right to a trial by jury; and if so, why not in all cases ? It is rather quaintly said, “ The law has not furnished the jury with weapons of polemic divinity ” But do not equally difficult and perplexing questions in medicine, and the arts and sciences, in which they have as little or generally much less skill, properly come before them ? Indeed, in the case of bequests to religious uses, wherein particular denominations of Christians are the objects of the testator’s bounty, do not similar theological questions often come before a jury ? Why, then exclude the parties from a court of justice in the other cases of disputes upon points of doctrine and discipline, and say to them, ‘ You must find a mutual council, who can agree, or agree among yourselves as well as you can ” ? In many, if not most, cases, it must happen that no mutual council can be chosen who will agree ; because the pastor will choose those of his own sect, and the parish will choose those of their sect. And what probability is there, vunder such circumstances, that a council will agree about matters which have always been a subject of dispute between the two sects, and which have uniformly distinguished the one sect from the other? The case of Burr vs. Sandwich decides that, “ if the minister adopts a new system of divinity, and the parish retain their former opinions,” “ they have a good cause to complain.” If they have a right to a teacher of their own sect or denomination, as the case seems to admit, ought they not to have a certain and adequate remedy ?
If we were disposed to raise questions upon this subject, we might inquire what are the rights and remedies of the parish, supposing that they, instead of their minister, all conscientiously change their religious tenets after his ordination over them. Have they not, in this case, the same reason for changing their religious teacher, as when the difference between them and him is occasioned by a change in his opinions? In the latter case, the ecclesiastical council held that “the peace and happiness of the society and of the teacher, as well as the honor and interest of religion in the town and its vicinity, did require that the pastoral relation between the teacher and the society should be dissolved.” And this decision was confirmed by the Court. Why, then, for the like reason, should not a dissolution of the pastoral relation be required in the former case? Neither party, in either case, is chargeable with any fault.^ In the case above reported, the ecclesiastical council “recognize the right of the minister to alter his religious sentiments, and to preach according to the dictates of his own judgment and conscience; and they vindicate for the people an equal right to retain ’ their “sentiments.” Upon these principles, it would seem that, whenever such a difference of opinion, in regard to religious doctrines, shall exist between the pastor and his society, whether it arise from a change in the sentiments of the one or the other, as that the interest and well-being of the religious society are materially affected thereby, it is within the jurisdiction and authority of an ecclesiastical council, in the exercise of a sound discretion, having due regard to the interest of religion, and the spiritual wel fare of the parties, to dissolve the pastoral relation between the pastor and his parish. And, if the spiritual welfare of the society require it, why may not this relation be dissolved, upon the same principle, for any other cause ? Yet, in Peckham vs. Haverhill, (16 Pick. 288,) it is said that the relation between the pastor and his parish is created by a contract, which cannot be dissolved on the application of the parish “without alleging some misconduct on the part of the minister.” And in Sheldon vs. Easton, (24 Pick. 281,) it is said there are only three established causes of forfeiture oí the office of pastor: “1. An essential change of doctrine ; 2. A wilful neglect of duty; 3. Immoral or criminal conduct.” And, in regard to the first, it is said that the pastor “ impliedly undertakes to continue of the same faith, and to preach the same doctrines,” as those he entertained and professed at the time of his ordination. ^ “If he changes these,” it is said, “ he ceases to perform one of the conditions of his settlement, and *269 entitles the parish to a dissolution of the contract.” But it seems to be clear that the relation between the pastor and his parish, according to former precedents, may be dissolved for other causes, and does not depend on any legal obligations resulting wholly from any merely civil contract. Suppose the pastor become imbecile from age, or paralytic from disease, or the parish, by reason of the diminution of their number, become quite unable to support him, (3 Mass. Rep. 182,) or he cease, from any cause, to be a useful teacher of the gospel to his society, — will not an ecclesiastical council be authorized to dissolve the relation between him and his parish, on the application of either party ? In the case of the Rev. Mr. Fuller, a difference in political sentiments between him and his parish was deemed a sufficient reason for dissolving his connection with his society.—Fuller vs. Princeton, cited in Avery vs. Tyringham 3 Mass. Rep. 183.—Ed.]