# Otis Thompson *versus* The Catholic Congregational Society in Rehoboth.

In an action by a minister of the gospel for his salary, upon a count for services rendered, it appeared that he had been prevented by the defendants from making use of the meetinghouse, but that he preached in private houses to such as chose to attend. *Held* not to be a variance.

Devise of land towards the support of public worship, for the benefit of the inhabitants of a precinct, the estate to be leased and the yearly income to be paid to the minister. Upon the ordination of a minister, the inhabitants vote him a fixed salary, which they afterwards increase, and which he receives for many years, making no claim to the income of the devise, though it exceeded the amount of his salary. *Held,* that the devise was to the inhabitants, and that the minister had no title to the income.

*It seems* that parol evidence was rightly admitted, to prove that the minister, upon his settlement, agreed to relinquish any claim to such income.

Upon a question of the dissolution of the contract between a parish and their minister, a mutual council should always be offered before an *ex parte* council is called. Thus where an *ex parte* council was called by the parish, and the minister declared to a committee of the council, that he never would agree to a mutual council, and afterwards, the proceedings of this council being ineffectual, the parish called another council, without renewing to the minister the offer of a mutual council, it was *held,* that the result of this last council in favor of dissolving the contract, would not justify his dismission.

In an action by a minister for his salary after his parish have voted to dismiss him, the defendants cannot introduce evidence of misconduct on the part of the plaintiff, which is not made the ground of charge against him in the vote of dismissal.

The immoralities which are sufficient to justify a parish in dismissing their minister, without the intervention of a council, are of the grosser sort ; such as habitual intemperance, unchaste behaviour, &c. ; lesser offences, such as imprudence, censoriousness, &c., which may or may not be good cause of dismission, ought to be inquired into by a fair and impartial council. *Semble.*

**470**

Assumpsit for one year's salary, from September 24, 1825, to September 24, 1826, due to the plaintiff as the ordained minister of the Catholic Congregational Church and Society in the second precinct in Rehoboth ; also for 4000 dollars money had and received by the society to the plaintiff's use Plea, the general issue. A trial was had before *Morton* J.

The plaintiff was ordained as minister of the society and of the church connected with it, on the 24th of September, 1800. The society passed a vote granting him a salary of 350 dollars a year, so long as he should continue to perform the duties of minister. In 1810, the society raised the salary to 450 dollars, and in 1813, to 500.

It was agreed that the plaintiff officiated as the pastor of the church and society, during the year for which he now claimed his salary, and that he preached in the meetinghouse until he was prevented by the society, and afterwards performed the services of public worship in private houses, to such of the society as chose to hear him.

On the 18th of June, 1792, an act was passed to incorporate the society, and to repeal an act, passed in 1761, investing the committee of the second precinct in Rehoboth with corporate powers.

In support of the count for money had and received, the plaintiff produced the will of Ephraim Hunt, dated February 21, 1774, and approved March 4, 1776, in which the testator devises and devotes certain real estate towards the support of public worship, for the benefit of the inhabitants of the second precinct in Rehoboth, who shall attend meeting in the church at Palmer's river, and directs that the estate shall be leased out, and the yearly income and rents paid to the minister of the church at Palmer's river. It appeared that the society, after its incorporation, took possession of the estate by its trustees, and received the rents and profits thereof from the plaintiff's ordination to the present time ; which greatly exceeded the amount paid to the plaintiff as his salary, and which have been added to the fund of the society. The church suffered no change whatever by the incorporation of the society, but remains the same body as it was in 1774.

In answer to this count, the defendants produced evidence tending to show, that at the time of the plaintiff's settlement he agreed, in consideration of his being ordained and receiving the stipulated salary, to relinquish all claim and title to the income of the Hunt devise. This evidence, being parol, was objected to by the plaintiff, but was admitted.

The question was left to the jury upon the evidence, and upon this count they found for the defendants.

In answer to the counts for one year's salary, the defendants offered receipts, showing that the plaintiff had received his salary for the first quarter of the year, and they contended that before the termination of this quarter, he had been dismissed from his office of minister of the society.

For this purpose the defendants offered the votes of the society, of September 9, 1825, dismissing the plaintiff from his pastoral office, requesting the church to concur in his dismission, and to invite the plaintiff to join them in calling a mutual council to complete his dismission, and if he should refuse, then to call an *ex parte* council ; and in case the majority of the church should refuse to call a council, requesting the minority to do it ; also choosing a committee to communicate these votes to the church. The defendants then offered a copy of a communication to the church by this committee, dated September 9, 1825, and the answer of the church declaring that they do not wish the dismission of their pastor, and refusing to join in calling a council. Also the request of a minority of the church to the plaintiff, dated September 19, 1825, to join in a mutual council, and the plaintiff's refusal, dated September 20th. Also letters missive by a minority of the church, dated October 1, 1825, calling a council, and. the proceedings and result of the council, dated October 12, 1825, in which they declare that the minority of a church may rightfully call an ecclesiastical council, but that such council has no right to advise the dismission of their pastor ; and they recommend to the aggrieved members of the church to make further efforts for a reconciliation, and to the pastor to agree to a mutual council.

The defendants then offered the votes of the society of October 25, 1825, to dismiss the plaintiff, because owing to his conduct they considered his usefulness very much at an end ; to have a council called ; and to choose a committee to select the council, issue letters missive, and make communication in behalf of the society to the council when assembled. They also offered a request of three members of the church to the plaintiff, dated October 15, 1825, to unite with them in a mutual council, and his answer, dated the 17th, declining. Also a letter missive calling an *ex parte* council, signed by five members of the church, and by the committee of the society.

The remonstrance of the plaintiff against the meeting of the council, dated October 29th, and two protests of the

**472**

plaintiff to the council, dated November 2d, against their authority to proceed, were then offered.

The defendants also offered a notice of the committee of the society to the plaintiff, that they had called a council, of the time and place of meeting of the council, and of the charges which they intended to prefer against him, dated October 27, 1825.

The defendants then proved, that a committee of the first council advised the plaintiff to agree to a mutual council, and that he refused, and declared that he never would agree to any council. He appeared before the last council, but it was only to object to their jurisdiction.

The defendants then offered the proceedings and result of an *ex parte* council, held on the 1st and 2d of November, 1825, in which the council declare, that they are regularly convened and have authority to proceed, that a mutual council has been sufficiently offered, and that it is expedient that the ministerial connexion between the plaintiff and defendants be dissolved. They recommend to the society to pay the plaintiff 500 dollars, if he will consent to the dismission. They decline investigating the charges brought against the plaintiff, but declare that their decision in favor of his dismission is founded upon his unjustifiable and oppressive discipline in his church, the alienation of many of his church and society, and the loss of his usefulness as a minister, and the danger that his continuance will increase the existing difficulties.

The plaintiff objected to the admission of the proceedings relative to the last council and of the result of the council, because there was no offer of a mutual council, and because no sufficient cause for dismission was assigned. The defendants contended that the declaration of the plaintiff, that he never would agree to a mutual council, was on his part a waiver of any right to an offer of a mutual council, and justified the defendants in calling an *ex parte* council without any offer of a mutual council, and also that the plaintiff's appearance before the council was an admission that it was regularly convened. But the judge rejected the evidence.

The defendants then offered the proceedings of the society at a meeting on the 30th of November, 1825, when it was

voted to dissolve the connexion between the plaintiff and the church and society for the following causes, viz. the advice and recommendation of the former councils ; — that the plaintiff had neglected his parochial duties ; — that by his deportment towards individual members of the society and members of the church, and by his unjustifiable and oppressive proceedings in the church, he had forfeited his contract with the defendants.   It was also voted to accept and approve the result of the council held on the 1st and 2d of November, and to direct the trustees of the society not to pay the plaintiff his salary any longer, and to shut up the meetinghouse, and to communicate these proceedings to the plaintiff.

The plaintiff objected to the admission of this evidence, because the proceedings were inoperative, there being no sufficient causes assigned for the dissolution of the contract between the parties.   The evidence was rejected.

The defendants then offered to show that the plaintiff had, by unchristian and immoral conduct, forfeited his office ; and they proposed to prove specifically, that he had been partial and oppressive in church discipline, in preferring charges before the church against an individual, of falsehood and slander, which were not supported, and charges which were frivolous and vexatious, such as that the person complained of demanded and took unreasonable prices for certain articles, that he practised deceit in the sale of other articles, and that he was guilty of intoxication.   They also offered to prove that the plaintiff had said of three members of his church, that they were liars, of one of the deacons, that he was a wicked man, &c.

To the admission of this evidence the plaintiff objected, because these allegations now proposed to be proved, were no assigned by the society, in their vote, as the causes of the plaintiff's dismission, and because the plaintiff had in no way any notice of them, nor any opportunity to be prepared to meet the evidence produced in support of them.   The evidence was rejected.

The defendants contended that as the plaintiff, in his counts for his salary, had alleged the performance of the duties of his office, and as the evidence showed that he had not in fact

474

Thompson
*v.*
Cath. Cong.
Soc. in
Rehoboth.

performed them, the counts were not supported, although it appeared that the defendants themselves had prevented the performance. But the judge overruled this objection, and instructed the jury, that if the plaintiff was ready and offered to perform his parochial duties, and was prevented by the acts of the defendants, he was entitled to recover in this action.

To this instruction the defendants excepted. If it was wrong, or if any of the decisions of the judge in admitting or rejecting evidence was erroneous, a new trial was to be granted ; otherwise judgment was to be rendered upon the verdict.

*Oct.* 25th.

*Williams* and *Hunt*, for the defendants, cited to the point of variance, and to show that the plaintiff could not recover his salary under the money counts, 2 Chit. Pl. 93, note ; *Hulle* v. *Heightman*, 2 East, 145 ; *S. C.* 4 Esp. R. 77 ; *Towers* v. *Barrett*, 1 T. R. 133 ; *Weston* v. *Downes*, 1 Doug. 23. — And to show the admissibility of parol evidence to prove that the plaintiff relinquished his claim to the Hunt devise, 3 Stark. Ev. 1054, note 1 ; *Fleming* v. *Gilbert*, 3 Johns. R. 531.

They insisted that the evidence of the doings of the *ex parte* council held on the 1st and 2d of November, 1825, was admissible ; that the plaintiff having declared that he would not join in a mutual council, was estopped to say that an offer of such a council should have been made to him ; and that the causes assigned by the council for his dismission, were sufficient.

They likewise insisted, that the causes of dismission assigned by the society in their vote of November 30, 1825, were sufficient ; that if the charges were not specific, the plaintiff might be entitled to delay, in order that he might learn the grounds of the defendants' dissatisfaction, but that it was not necessary to state them particularly in the vote.

In regard to the acts of misbehaviour on the part of the plaintiff, the evidence of which was rejected, they contended that it was not necessary that the society should meet and express their dissatisfaction, and communicate the result to the plaintiff ; it was sufficient for them to show, on the trial, that he had been guilty of misconduct. whereby he had forfeited his

salary. *Avery* v. *Tyringham*, 3 Mass. R. 170, 181. If the evidence offered was a surprise upon the plaintiff, he should have asked for a continuance.

*Baylies, Cobb*, and *A. Cushman*, on the other side, contended, that the defendants had not produced legal and sufficient evidence of the dissolution of their contract with the plaintiff. In regard to the Hunt devise, they said that the plaintiff was entitled to the rents ever since his ordination, or at least to those which accrued within six years before this action was brought, in addition to his salary; though he was willing to have the salary deducted. The defendants are merely trustees of the estate, and are bound to pay the income to the minister. The contract between the parties was shown by the vote upon record, and parol evidence of a relinquishment of this income was inadmissible, as it varied the written contract. 3 Stark. Ev. 1005, *et seq.; Brigham* v. *Rogers*, 17 Mass. R. 571.

The opinion of the Court was drawn up by

PARKER C. J. The first objection on the part of the defendants cannot be sustained. It appears by the evidence, that services were performed to as many of the society as chose to attend. Besides, the services of a minister are not limited to public performances in the pulpit. He was a minister *de facto* as well as *de jure*, until lawfully dismissed, and might lawfully claim his salary on the ground of services, notwithstanding the meetinghouse was shut against him.

2. As to the second question, it is necessary to consider the nature and effect of the devise. The parish or society were the object of the testator's bounty. The estate is devised and devoted towards the support of public worship, for the benefit of the inhabitants of the second precinct in Rehoboth, who shall attend meeting in the church at Palmer's river; the estate to be leased, and the yearly income and rents to be paid to the minister of Palmer's river aforesaid. It was for the benefit of the inhabitants, to relieve them, in whole or in part, from the charge of supporting a minister. Probably it was considered by the testator an insufficient fund for the support of a minister, and that it would be necessary for the inhabitants to contribute; for it was given *towards* the support

*Thompson v. Cath. Cong Soc. in Rehoboth.*

476

*April term 1828, at Taunton.*

of a minister, intimating that other funds would be necessary. And this will was made in 1774, when probably the income of the property was trifling compared with its present value.

It was then a fund established for the use and benefit of the society, to be appropriated towards the support of a minister. The society were to elect a minister in the usual form, and to contract with him. If there were no stipulation for a salary, it would be presumed that both minister and parish understood and intended that his services were to be compensated by the income of the devise. But if a salary was stipulated for, equal to what is usual in other parishes for similar services, no notice being taken of the devise, it would seem to be the understanding of the parties, that the minister looked to the society and not to the fund, and that the society were responsible to the minister, meaning to indemnify themselves out of the fund.

Such undoubtedly was the case between these parties, and we think it so obvious that the minister did not expect or intend to claim the income over and above his salary, that we cannot but be surprised that he should sue for it. Why increase his salary from time to time to meet probably the expense of living, if he had this fund to resort to, which it is stated yielded an income much greater than his salary? Why suffer this income to be received for twenty-seven years by the society, without asking for it until the disagreement took place which ended in a dissolution of their connexion? We think it clear that he settled for the salary, and not for the income of the *devise;* that he has no title to it as minister, because it was given to the inhabitants; and because in fact he has received as much of it as he was content with, in the shape of salary.

Whether the parol evidence were or were not admissible, we think would make no difference in this part of the case. We are inclined to think however, parol evidence that he agreed to relinquish the income of the devise, was rightly admitted, as it was proving the terms on which he settled, and was in conformity with the acts of the parties.

3 Was the plaintiff lawfully dismissed on the 30th of November, 1825? This will depend on the previous pro

ceeding — the validity of the result of the *ex parte* council; and that will depend upon the question, whether a mutual council had been offered by the parish and refused by the plaintiff. We must consider here the parish, in their corporate capacity, as one party, and the minister as the other. The offer of a mutual council, to be effectual, must have been made by virtue of authority from the parish.

The proceedings relative to the first council are immaterial, as they came to no result affecting the question; except that the advice given by them to the plaintiff to consent to a mutual council, may be worthy of consideration in relation to the subsequent proceedings.

In regard to the second council, held on the 1st and 2d of November, which resulted in advice to dissolve the connexion, this was *ex parte*, and there was no call upon the plaintiff to agree to a mutual council, except what took place previous to the former council. But it is said that the plaintiff had repeatedly refused, in one shape or another, to call a mutual council, and had declared, previous to the first council, that he never would agree to a mutual council. It appears to us that it is not proper to connect the circumstances of the two councils together so as to support the latter upon facts which related only to the former. The whole proceedings under the first attempt to procure a council terminated with the result. The parties were to begin *de novo*, and in order to lay a foundation for an *ex parte* council there should have been a new offer of a mutual council. But there was none. We do not think the declarations of the plaintiff made to a committee of the former council a sufficient reason for not renewing the offer. They were not authorized to make the offer, and their advice to the plaintiff might have vexed him into sudden expressions which he might have revoked if regularly called upon by persons duly authorized. This result therefore of an *ex parte* council does not justify the dismission of the plaintiff.[1]

4. Was it competent to prove irregular conduct or im-

---

[1] See *Thompson* v. *Catholic Congr. Soc. in Rehoboth*, 7 Pick. 160; *Cochran* v *Camden*, 15 Mass. R. 303 to 305.

morality, in answer to a claim for salary, without making it the ground of charge against the plaintiff on the vote to dismiss ? We think it was not, as it would be taking the minister by surprise, and perhaps giving occasion to fabricate charges against him which did not exist at the time of his dismission. This opinion is conformable to the intimations of the Court in the case of *Avery* v. *Tyringham*, 3 Mass. R. 160, and *Burr* v. *Sandwich*, 9 Mass. R. 277.

5. In regard to the last point, that the defendants were not allowed to prove certain acts, declarations and conduct of the plaintiff, tending to show that he was unfit for the pastoral relation, we think the judge did right in rejecting the evidence. The question was, whether the connexion was dissolved on the 30th of November, 1825. The evidence offered was the vote of the parish. This was nugatory, unless founded upon a lawful and valid advice of a council, or unless grounded upon such gross immorality as would destroy the usefulness of the plaintiff as a minister. If this latter were the true cause for which the vote of dismission was passed, it ought to have been stated and alleged ; and then the plaintiff would have had opportunity to judge whether to bring his suit or not, and this he would not do unless he could prepare himself with satisfactory evidence to disprove the allegations. But he is now taken by surprise, and ought not in this manner to be subjected to a scrutiny of his character.

I must here express my doubts, whether the facts offered to be proved under this head would constitute immorality, in the sense in which the term has been used by the Court in relation to this subject. Imprudence, folly, censoriousness, spirit of persecution, &c., were very proper subjects of discussion and animadversion by an ecclesiastical council, but not for a court of justice. They are immoralities, but not such as *per se* would defeat a contract of this nature ; though exceedingly proper to be considered by a council, if habitual, as sufficient to found advice of dissolution upon. The immoralities adverted to by the Court heretofore, as sufficient to justify a parish in dismissing their minister without the intervention of a council, are of the grosser sort ; such as

habitual intemperance, lying, unchaste or immodest behaviour, &c.[1] The lesser offences, which may or may not be good cause of dismission, ought to be inquired into by a fair and impartial council, lest occasional inadvertencies, perhaps repented of as soon as committed, should be magnified by enemies into gross defects of character.

Thompson<br>v.<br>Cath. Cong<br>Soc. in<br>Rehoboth.

*Judgment according to verdict.*

---

[1] See *Chaddock* v. *Briggs*, 13 Mass. R. 253, 254.